**Pia ESPOSITO, on behalf of herself and all others similarly situated,**
**Plaintiff,**

**v.**

**George SHULTZ, Secretary, United States Department of the Treasury, et al.,**
**Defendants.**

**No. C–72–1310–CBR.**

United States District Court,
N. D. California.

Oct. 29, 1973.

As Modified Jan. 14, 1974.

Thomas W. Pulliam, Jr., Western Addition Law Office, San Francisco, Cal., for plaintiff.

**1060**

James L. Browning, Jr., U. S. Atty., Howard T. Chang, Asst. U. S. Atty., San Francisco, Cal., for defendants.

### ORDER

RENFREW, District Judge.

Plaintiff, on behalf of herself and members of a purported class, challenges the constitutionality of 19 U.S.C. § 1491 and 19 C.F.R. § 20 insofar as they authorize the Bureau of Customs to take custody of unclaimed goods or merchandise entering the United States and to warehouse it at the owner's or consignee's expense without making reasonable efforts to notify the owner or consignee of such action. Plaintiff contends that the Bureau's failure to make such efforts deprived her of property without due process of law in violation of the Fifth Amendment. She seeks a declaratory judgment that 19 U.S.C. § 1491 and 19 C.F.R. § 20 are unconstitutional and an injunction enjoining defendants from enforcing said statute and regulation.[1]

Plaintiff moved for summary judgment and defendants moved to dismiss or, in the alternative, for summary judgment.

In June 1970, plaintiff, an indigent and welfare recipient-resident of San Francisco, and her son were vacationing passengers on a Capitol Airways flight from Oakland to Frankfurt, Germany. In transit one of plaintiff's suitcases was lost. Capitol Airways was unable to locate it and paid plaintiff $114 in consideration for a release from all future claims resulting from the loss of the suitcase and personal property therein. Sometime thereafter, the suitcase arrived in Philadelphia, Pennsylvania, from an overseas Capitol Airways flight. It was unclaimed and subsequently forwarded to the Los Angeles District of the Bureau of Customs[2] where it arrived on September 21, 1970, and was placed in customs storage. Plaintiff received no notice of

the whereabouts of her suitcase until March 8, 1972, at which time she was advised that the suitcase would be sold at special auction on April 26, 27, or 28, 1972. Plaintiff then wrote asking that the suitcase be returned to her. She was advised by the Bureau that in order to obtain the suitcase she would be required either to pay $276.66 in warehouse and cartage costs prior to the auction or submit the winning bid at auction. Plaintiff did not pursue either alternative and the suitcase and its contents were sold at special auction on April 27, 1972. Plaintiff's personal effects which had theretofore been removed from the suitcase were forwarded to her San Francisco address. It is agreed that defendants' action complied with 19 U.S.C. § 1491 and 19 C.F.R. § 20.

■ Preliminarily, the class of persons having an interest in imported and unclaimed goods or merchandise placed in customs storage, which plaintiff purports to represent, is very vague. Plaintiff has indicated willingness to exclude from the class commercial importers and merchants, and possibly persons shipping unaccompanied baggage. The class still is less than precisely defined. In any event, the appropriateness of the class action depends upon the validity of plaintiff's claim; for her claim must be typical of the claims of the class, and if she fails to state a claim, than a *fortiori*, so do the other members of the purported class, whatever its parameters.

For the reasons set forth below, the Court finds that plaintiff has failed to state a claim upon which relief can be granted, and hence the Court need not concern itself with the class action questions of this case, e. g., whether there are questions of law or fact common to the class.

■■ Plaintiff initially asserted that this Court had subject matter jurisdic-

---

1. While plaintiff originally sought damages as well, she abandoned this claim. It is clear that such a claim does not lie with respect to the detention of any goods or merchandise by any officer of customs. 28 U.S.C. § 2680(c).

2. There is no explanation why the suitcase was sent to Los Angeles rather than to the point of origin, Oakland, California.

tion under each of the following: 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3), although no action under the color of state law was alleged; the Administrative Procedure Act, 5 U.S.C. §§ 701–706, although no legal wrong was suffered because of agency action within the meaning of a relevant statute; the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, although § 2201 requires that the Court have "a case of actual controversy within its jurisdiction" to issue a declaratory judgment;[3] and 28 U.S.C. § 1361, although writs of mandamus are issued only when a government official owes the petitioner a ministerial duty, i. e., where the official has a positive command so plainly prescribed as to be free from doubt.[4] Plaintiff amended her complaint to assert jurisdiction under 28 U.S.C. § 1337 and 19 U.S.C. § 1491. The Court assumes jurisdiction here because the Tariff Act of 1930, which included the predecessor to 19 U.S.C. § 1491, has a "significant" constitutional basis in the Commerce Clause,[5] and therefore 19 U.S.C. § 1491 is an "Act of Congress regulating commerce" for purposes of the jurisdiction of this Court under 28 U.S.C. § 1337. See, Murphy v. Colonial Federal Savings and Loan Association, 388 F.2d 609, 615 (2 Cir. 1967); Marquez v. Hardin, 339 F.Supp. 1364, 1371 (N.D.Cal.1969).

■ Although plaintiff seeks to enjoin the enforcement of an Act of Congress on the ground that the statute is unconstitutional, she has not requested the impanelment of a three-judge court. 28 U.S.C. § 2282. Nevertheless, this Court should inquire as to the necessity of convening a three-judge court to decide the instant case. The Supreme Court repeatedly has admonished district court judges to construe strictly the statutes requiring the convening of three-judge courts. E. g., Board of Regents v. New Left Education Project, 404 U.S. 541, 545, 92 S.Ct. 652, 30 L.Ed. 2d 697 (1972); Phillips v. United States, 312 U.S. 246, 250–251, 61 S.Ct. 480, 85 L.Ed. 800 (1941). Furthermore, "[a] three-judge court should not be convened where there is no present need for injunctive relief." Frankel v. Gardner, 263 F. Supp. 218, 220 (E.D.Pa.1966).

■ Injunctive relief is inappropriate here, because it is most unlikely that plaintiff's alleged deprivation would reoccur. Although plaintiff intends again to travel overseas, her ability to carry out her intention, considering her present indigent status, is doubtful. Furthermore, even if plaintiff were to fly overseas again and have her luggage misplaced, the probability is not great that the air carrier, who is primarily responsible, would be unable to relocate her luggage. Even if such misplaced luggage somehow again found its way to the Bureau of Customs, it is highly unlikely that it would be stored at some place other than the customs district nearest to plaintiff's point of origin. Finally, it cannot be assumed that plaintiff again would not receive prompt notice, since every regional office and most districts of the Bureau of Customs have adopted a policy, Bureau Circular INS–3–IMS, which advises its employees that notice be sent to consignees or owners that their merchandise has been placed in general order.[6] This policy was in effect in Region VII and in District 27 of the

---

3. The "case of actual controversy" requirement is briefly discussed in determining whether there is a claim upon which relief can be granted, *infra*.

4. United States v. Walker, 409 F.2d 477, 481 (9 Cir. 1969).

5. The express purpose of the Tariff Act of 1930 was:
   " * * * To provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, to protect American labor * * *." Act of June 17, 1930, ch. 497, 46 Stat. 590.

   The Commerce Clause authorizes Congress: "To regulate commerce with foreign nations, and among the several states, and with the Indian tribes." United States Constitution, Article I, Section 8, Clause 3.

6. It is hoped that every customs district will promptly adopt the policy embodied in INS–3–IMS.

Bureau of Customs (Los Angeles, California), where plaintiff's suitcase was stored, but because it was not explicitly marked "personal property," the policy was misconstrued so as not to require notice to be sent to plaintiff. There is no evidence whatsoever of similar "misconstructions" by officials of customs in other districts in which the policy is in effect and the likelihood that such a mistake would be repeated appears remote. Considering the high improbability of reoccurrence, the Court concludes that the plaintiff is not threatened with immediate and irreparable injury and the extraordinary remedy of injunctive relief is unwarranted. Seller v. Regents of University of California, 432 F.2d 493, 497 (9 Cir. 1970), cert. denied, 401 U.S. 981, 91 S.Ct. 1194, 28 L.Ed.2d 333 (1970); Holiday Inns of America, Inc. v. B & B Corp., 409 F.2d 614, 618 (3 Cir. 1969).

Since repetition of plaintiff's alleged injury is "too remote and insubstantial, too speculative in nature, to justify an injunction," similarly, declaratory relief is inappropriate. Eccles v. Peoples Bank, 333 U.S. 426, 434, 68 S.Ct. 641, 645, 92 L.Ed. 784 (1948).

 In addition, the Declaratory Judgment Act confers discretion upon the trial court. 28 U.S.C. § 2201 provides in pertinent part:

"In a case of actual controversy within its jurisdiction, * * * any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. * * * *"

The Supreme Court has construed the above as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952). See also Solenoid

Devices, Inc. v. Ledex, Inc., 375 F.2d 444, 445 (9 Cir. 1967); Mitchell v. Donovan, 300 F.Supp. 1145, 1147–1148 (D.Minn. 1969), rev'd on other grounds, 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970). Considering the total factual context of the instant case and the probability that no "immediate or real" legal issues are presented, this Court, in the exercise of its discretion for reasons previously discussed, concludes declaratory relief would be improper.[7] Declaratory relief seems particularly unwarranted in light of Circular INS–3–IMS and plaintiff's settlement with the airline.

Consequently, because plaintiff is not entitled to monetary damages, an injunction, or a declaratory judgment, the complaint must be dismissed for failure to state a claim upon which relief can be granted. This disposition makes it unnecessary to determine whether early notice to owners or consignees of stored goods or merchandise is constitutionally compelled, or whether the airline is an indispensable party to this action, or whether the plaintiff's settlement with the airline terminated her property rights in the suitcase so as to bar this lawsuit.

---

7. Any declaratory relief in this case might very well constitute an impermissible advisory opinion. *Cf.* Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).